AVCO FINANCIAL SERVICES OF
INDIANAPOLIS, INC., Appellant
(Defendant Below),

v.

METRO HOLDING COMPANY,
Appellee (Plaintiff Below).

No. 49A04–9002–CV–90.

Court of Appeals of Indiana,
Fourth District.

Dec. 19, 1990.

Rehearing Denied Jan. 25, 1991.

John R. Carr, III, Charles N. Doberneck, Buschmann, Carr & Shanks, Indianapolis, for appellant.

Gregory P. Schmith, Indianapolis, for appellee.

CONOVER, Judge.

Defendant–Appellant Avco Financial Services of Indianapolis, Inc. (Avco) appeals the trial court's grant of summary judgment in favor of Plaintiff–Appellee Metro Holding Company (Metro).

We affirm.

Avco presents two issues for our review. We restate them as:

1. whether the grant of summary judgment was proper when the Marion County Auditor did not give Avco actual notice of a tax sale of certain real estate; and

2. in the alternative, whether the procedure set forth in IND.CODE 6–1.1–24–4.2 is unconstitutional as applied to Avco.

On August 4, 1987, David and Pamela Day (the Days) executed and delivered to Avco a mortgage on five lots in North Plaza Addition in Indianapolis, Indiana. The mortgage was recorded on August 7, 1987, in the Office of the Recorder of Marion County. On September 14, 1987, the Marion County Auditor sent a notice to the Days indicating the real estate would be sold at the upcoming tax sale. Avco received no notice of the tax sale. The tax sale commenced on October 5, 1987, and on

October 8, 1987, Metro purchased two of the lots and received tax certificates evidencing the purchase.

In June, 1989, Metro filed a complaint to quiet title. Metro joined the Days and other parties, including Avco, to answer as to their interests in the real estate. In July, 1989, Metro filed a motion for summary judgment asking the court to enter a decree quieting title to the real estate based on tax deeds issued to Metro. In October, 1989, Avco filed a brief in opposition to Metro's motion for summary judgment claiming it did not receive notice of the tax sale as required by statute. Thereafter, the trial court granted Metro's motion for summary judgment and entered a decree quieting title to the real estate. The trial court found Avco did not have a "substantial property interest of public record" as defined by statute because Avco's mortgage was not of record sixty days before the date of the tax sale. Avco then filed a motion to reconsider, which the trial court denied. Avco appeals.

■■■ We note summary judgment is appropriate only in limited situations. Ind. Trial Rule 56 provides, in part:

(C) *Motion and Proceedings Thereon.*

... The [summary] judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, admissions and affidavits filed pursuant to Trial Rule 5(D), together with any testimony show that there is *no genuine issue as to any material fact,* and that *the moving party* is entitled to judgment *as a matter of law* ....

(E) *Form of Affidavits—Further Testimony—Defense Required* ....

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.... (Emphasis supplied).

Thus, the moving party carries the burden of establishing:

(a) there is no issue as to any material fact, and

(b) he is entitled to judgment as a matter of law.

*Creighton v. Caylor–Nickel Hospital, Inc.* (1985), Ind.App., 484 N.E.2d 1303, 1305–1306, *reh. denied, trans. denied.* The moving party must fulfill these two requirements before any burden shifts to the nonmovant. *Id.* The nonmovant may rest upon his pleadings until the moving party establishes no genuine factual issue exists. If, however, the moving party successfully demonstrates no genuine issue exists, the nonmoving party must show the presence of such a fact to stave off summary judgment. *Fort Wayne Community Schools v. Fort Wayne Education Association, Inc.* (1986), Ind.App., 490 N.E.2d 337, 339; *Conard v. Waugh* (1985), Ind.App., 474 N.E.2d 130, 134. In doing so, the nonmoving party may not merely rest upon his pleadings, but his response must set forth specific facts indicating an issue of material fact exists. *Raymundo v. Hammond Clinic Assoc.* (1983), Ind., 449 N.E.2d 276, 281; *Popp v. Hardy* (1987), Ind.App., 508 N.E.2d 1282, 1284; T.R. 56(E). If the nonmovant fails to meet this burden, summary judgment may be granted. *Raymundo, supra,* at 280; *Williams v. Lafayette Production Credit Assoc.* (1987), Ind.App., 508 N.E.2d 579, 582, *reh. denied;* T.R. 56(E).

■■■ When reviewing the grant of a summary judgment motion, we stand in the shoes of the trial court. *Lafary v. Lafary* (1985), Ind.App., 476 N.E.2d 155, 158. All evidence must be construed in favor of the nonmovant and all doubts as to the existence of a material issue must be resolved against the movant. *Raymundo, supra,* at 280; *Penwell v. Southern Life Ins. Co.* (1985), Ind.App., 474 N.E.2d 1042, 1044. Even if facts are not in dispute, summary judgment is inappropriate if conflicting inferences arise. *Board of Aviation Commissioners of St. Joseph County v. Hestor* (1985), Ind.App., 473 N.E.2d 151, 153.

We note at the outset Metro contends Avco did not properly place the notice re-

quirement or any other facts in issue. Metro claims it met its burden of establishing no issue as to any material fact existed and it was entitled to judgment as a matter of law when it submitted its motion for summary judgment together with copies of the tax certificates, the tax deeds, and certain affidavits relating thereto. Pursuant to IC 6–1.1–24–11(a) and 6–1.1–25–4(d), Metro posits this constituted presumptive evidence of the regularity and validity of the sale, and *prima facie* evidence title in fee simple vested in the grantee of the deed. Metro contends Avco did not meet its burden of demonstrating the presence of a genuine issue of material fact. Metro maintains the affidavit of Timothy Torrance (Torrance), the only affidavit or other pleading submitted by Avco, does not meet the requirements of T.R. 56(E). It maintains the affidavit does not show affirmatively Torrance was competent to testify to the matters stated therein. It further maintains the affidavit was not timely filed.

▪ We disagree with Metro. The affidavit of Torrance met the requirements of T.R. 56(E), which provides:

(E) *Form of Affidavits*—....

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein....

In his affidavit Torrance stated he was the Assistant Manager of Avco, he was familiar with the Days' mortgage, and Avco received no notice from the Marion County Auditor concerning the tax sale. From this information it may be inferred Torrance possessed the requisite personal knowledge and was competent to testify regarding notice.

▪ Even assuming the affidavit was insufficient, under the circumstances Metro waived any such deficiency in the affidavit when it failed to file an objection or motion to strike the affidavit. The complaining party has a duty to direct the trial court's attention to a defective affidavit pursuant to T.R. 56. *Enderle v. Sharman*

(1981), Ind.App., 422 N.E.2d 686, 691. An affidavit which does not satisfy the requirements of T.R. 56(E) is subject to a motion to strike, and formal defects are waived in the absence of a motion to strike or other objection. *Id.*, at 691–692. Thus, any defects in Torrance's affidavit are waived.

▪ Similarly, Metro also waived its right to raise on appeal whether Torrance's affidavit was timely filed. The record contains no evidence Metro objected to the late filing of Torrance's affidavit. Under the circumstances, we can find no cause for reversal. *Wisconics Engineering, Inc. v. Fisher* (1984), Ind.App., 466 N.E.2d 745, 753, *reh. denied, trans. denied.* A party who neglects to avail himself of a valid objection to a proceeding and stands by or participates therein until an adverse result is reached must bear the consequences. *Id.* Thus, Metro waived any objection to the timeliness of the affidavit. *Id.*

We find no error concerning Torrance's affidavit.

▪ We must, then, determine the substantive issue of the case. That is, we must decide whether the tax deed issued to Metro is invalid based on the Marion County Auditor's failure to give Avco notice of the tax sale. Avco maintains it should have received notice, thus the trial court erred in granting summary judgment in favor of Metro. Avco maintains it was entitled to such notice because it was the holder of a "substantial property interest of public record," as defined by IC 6–1.1–24–1.9. Avco argues its mortgage was duly recorded on August 7, 1987, which was more than sixty days before the sale date of October 8, 1990, thus it should have received notice of the sale.

In opposition, Metro contends Avco did not fall within the definition of "substantial property interest of public record" because its mortgage was recorded on August 7, 1987, only fifty-eight days prior to the date on which the sale commenced, October 5, 1987. Consequently, Metro maintains Avco should not have received notice of the tax sale.

IC 6–1.1–24–4.2(a), as it existed at the time of the sale, provided:

> (a) In addition to the notice required by sections 3 and 4 of this chapter, the county auditor shall send a notice of sale to all persons having a substantial property interest of public record that would be affected by the sale of that tract under this chapter.

IC 6–1.1–24–1.9, which was in effect at the time of the tax sale, defined "substantial property interest" as:

> ... "substantial property interest of public record" means title to or interest in real property possessed by a person and recorded in the office of a county recorder or available for public inspection in the office of a circuit court clerk no later than sixty (60) days before the date of sale under this chapter. The term does not include a lien held by the state or a political subdivision.

Thus, pursuant to statute, Avco was entitled to notice only if it held a recorded interest in the property for at least sixty days prior to the date of the sale. Therein lies the problem. Avco maintains the date of the sale was October 8, 1987, the date on which the property was actually sold, thus its mortgage was recorded sixty-two days before the sale date. However, Metro maintains the date of sale was October 5, 1987, the date on which the sale commenced, thus Avco's mortgage was recorded only fifty-eight days before the sale date.

▮▮▮▮▮▮ We must therefore determine the definition of "date of sale" intended by the legislature. When interpreting a statute, it must be remembered a statute is to be construed as a whole, giving the words their common and ordinary meaning and not overemphasizing a strict literal or selective reading of individual words. *Clipp v. Weaver* (1983), Ind., 451 N.E.2d 1092, 1094; *Gary Community Mental Health Center, Inc. v. Dept. of Public Welfare* (1987), Ind.App., 507 N.E.2d 1019, 1022, *reh. denied*. If the language of a statute is clear and unambiguous it is not subject to judicial interpretation. *Gary Community, supra.* However, when the language is reasonably susceptible to more than one construction, we must construe the statute to determine the apparent legislative intent. *Id.* We must view the statute within the context of the entire act, rather than in isolation. *Watkins v. Alvey* (1990), Ind. App., 549 N.E.2d 74, 76. From the parties' argument, we find the phrase "date of sale" is susceptible to at least two constructions, thus judicial interpretation of the language is warranted.

A brief examination of several sections of the Act reveals the legislature's intent the "date of sale" must be the day the sale commences, which is the first Monday in October. IC 6–1.1–24–2(a)(6), in effect at the time, provided:

> (a) ... each county auditor shall prepare a notice. The notice shall contain: ...
> (6) a statement that the sale will commence at 10 a.m. on the first Monday in October of the year of the sale and will take place on the dates provided by section 5(b) of this chapter.

The date of the tax sale as specified in the statute must be considered definitive because it is the date on which all of the procedural prerequisites to the tax sale are based. For example, the dates for publication of notice of the sale, notice to the owner, and notice to substantial property interest holders are all based on the date of sale specified in IC 6–1.1–24–2(a)(6). *See* IC 6–1.1–24–3; 6–1.1–24–4; 6–1.1–24–4.2. If the date of sale was not a specific, yearly date, it would be impossible for the county auditor to comply with the notice requirements prescribed by statute, for the auditor has no way to determine in advance the precise date on which the sale of each advertised parcel of real estate would be consummated. In the case at bar, for example, the auditor could not determine whether the date the sale actually would be conducted would be October 5, 1987, or a subsequent date. The language of the Act, read as a whole, clearly indicates the Indiana legislature intended the "date of sale" to be the date the sale commenced. It would be unreasonable to find the auditor must base his compliance with the statutes on some unknown, unspecified date.

Such a construction of the statute would only lead to confusion and endless litigation.

Under the facts of this case, it is clear Avco did not record its substantial property interest of public record within the time prescribed by statute, thus it was not entitled to notice of the tax sale.

■■■ In the alternative, Avco contends the procedure set forth in the statute was unconstitutional as applied to the facts of this case. Avco maintains it was denied due process because it was not given actual notice of the tax sale either before or within a meaningful time after the tax sale.

■■■ We note at the outset Avco must meet a severe test in challenging the constitutionality of the tax sale statutes. The challenging party has the burden of presenting a strong and clear case establishing the unconstitutionality of statutes. *Mennonite Board of Missions v. Adams* (1981), Ind.App., 427 N.E.2d 686, 687. The court reviewing such challenge not only presumes the statutes are constitutional, but accords the statutes all reasonable presumptions supporting their validity. *Id.* We will not lightly conclude the legislature has either ignorantly or willfully violated the Constitution. To declare an act void, it must be clearly subversive to the Constitution. *Id.*, at 688.

In support of its argument Avco cites *Mennonite Board of Missions v. Adams* (1983), 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180, in which the United States Supreme Court reviewed the notice requirements of the Indiana tax sale statute. In *Mennonite*, property on which the mortgagee held a mortgage was sold at a tax sale. The county provided notice as required by statute. That is, the county posted and published an announcement of the sale and mailed notice to the mortgagor by certified mail. The mortgagee was not notified of the pending sale, and did not learn of the sale until more than two years later, after the redemption period had run. The Court held the manner of notice provided to the mortgagee did not meet the requirements of the Due Process Clause of the Fourteenth Amendment. The Court held a mortgagee possesses a "substantial property interest that is significantly affected by a tax sale" because, ultimately, a tax sale may result in the complete nullification of the mortgagee's interest. *Id.*, at 798, 103 S.Ct., at 2711. The Court stated:

> Since a mortgagee clearly has a legally protected property interest, he is entitled to notice reasonably calculated to apprise him of a pending tax sale. When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service. *But unless the mortgagee is not reasonably identifiable, constructive notice alone does not satisfy the mandate of Mullane.* (Citations omitted). (Emphasis supplied).

*Id.*, at 788; 103 S.Ct., at 2711.

Contrary to Avco's assertion, the Supreme Court's holding in *Mennonite* does not prevent us from finding the statutes in question constitutional. As the dissent in *Mennonite* aptly points out, the majority holds there is a condition for receiving notice, namely, that the name and address of the party be "reasonably ascertainable." *Id.*, at 804; 103 S.Ct., at 2714. The majority suggests the State should make some effort to discover the identity and whereabouts of a mortgagee who is not listed in the public record; however, the State is not required to "undertake extraordinary efforts" to discover such information. *Id.*, at 798; 103 S.Ct., at 2711, n. 4.

Thus, the question becomes whether the statutes specifying notice must be given to the holder of a "substantial property interest of public record" only when such an interest has been recorded at least sixty days prior to the date of the tax sale come within the purview of the "reasonably ascertainable" standard set forth in *Mennonite*. We find the statutes are constitutional in their application.

When the practicalities of the situation are considered, the sixty day time limit is reasonable. As Metro points out, the county auditor must perform a title search to

identify persons holding a substantial property interest of public record. After identifying any such persons, the auditor must locate them and mail a notice of the sale twenty-one days prior to the date of the tax sale. In the interest of economy, the legislature wisely imposed a "cut-off" date of sixty days prior to the sale, which allowed the auditor to review and act upon any title searches conducted. To decrease the sixty day limit and make the "cut-off" date closer to the tax sale could impose an undue burden upon the auditor which could prohibit him from complying with other time restrictions imposed by the act. While we acknowledge the sixty day limit is merely an arbitrary number chosen by the legislature, we conclude it is not an unreasonable number in light of the practicalities of the system.[1]

In an alternative argument, Avco argues that if it is not practical to give notice prior to the tax sale, then the State is required to give notice within a meaningful time after the tax sale. Avco cites *Parratt v. Taylor* (1981), 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420, in support of this proposition. In *Parratt*, the United States Supreme Court stated:

> Our past cases mandate that some kind of hearing is required at some time before a State finally deprives a person of his property interests. The fundamental requirement of due process is the opportunity to be heard and it is an "opportunity which must be granted at a meaningful time and in a meaningful manner." However, as many of the above cases recognize, we have rejected the proposition that "at a meaningful time and in a meaningful manner" *always* requires the State to provide a hearing prior to the initial deprivation of property. This rejection is based in part on the impracticability in some cases of providing any preseizure hearing under a state-authorized procedure, and the assump-

tion that at some time a full and meaningful hearing will be available. (Citations omitted).

*Id.,* at 540, 101 S.Ct. at 1915–1920. From *Parratt* Avco contends "when a constitutionally protected interest is the subject of official deprivation by the State, the fact that it may be impractical to provide for a meaningful pre-deprivation hearing does not mean that the State can take property without a meaningful post-deprivation hearing." (Appellant's Brief, at 14).

We acknowledge due process requires there be some form of hearing before the State "finally" deprives a person of his property interest. The quiet title action, here initiated by Metro, fulfills the requirements of due process. As our supreme court stated in *Calhoun v. Jennings* (1987), Ind., 512 N.E.2d 178, 184, *reh. denied:*

> Although issuance of the deed vests in the grantee title to the property in fee, it does not, in itself, constitute a "final adjudication" as the title is still subject to challenge in a quiet title action. The tax sale purchaser himself may choose to initiate such an action, ... in which case *Mullane* [339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) ], as construed in *Texaco* [454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982) ], would require that all reasonably ascertainable parties with an interest in the property receive actual notice. *This is the due process to which interested parties are entitled under the Constitution.* (Emphasis supplied).

Here, Avco was given the opportunity to challenge Metro's right to the property in the quiet title action. Therefore, based on *Calhoun,* Avco was not denied due process of law.

The trial court did not err in granting summary judgment in favor of Metro.

Affirmed.

---

1. We note IC 6–1.1–24–1.9 was amended in 1988, placing further restrictions upon the auditor. It now reads:

   As used in this chapter, "substantial property interest of public record" means title to or interest in a tract possessed by a person and recorded in the office of a county recorder or

   available for public inspection in the office of a circuit court clerk *no later than the hour and date the sale is scheduled to commence under this chapter.* This term does not include a lien held by the state or a political subdivision. (Emphasis supplied).

SHIELDS, P.J., concurs.

MILLER, P.J., concurs in result.